Jason A. Nagi
**POLSINELLI PC**
600 Third Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jnagi@polsinelli.com

*Counsel to Wilmington Trust, National
Association, as Trustee, for the Benefit of the
Holders of CoreVest American Finance 2019-1
Trust Mortgage Pass-Through Certificates*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
In re:                                              :
                                                    :       Chapter 11
    Monticello Horizon Legacy, LLC,          :
                                                    :       Case No.: 20-35665-cgm
                Debtor.        :
-----------------------------------------------------------X   :

### OBJECTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION TO MOTION TO AUTHORIZE DEBTORS' USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND PURSUANT TO 11 U.S.C. § 361 FIXING ADEQUATE PROTECTION PAYMENT AMOUNT TO SECURED CREDITOR AND FOR OTHER AND FURTHER RELATED RELIEF WITH POINTS OF LAW

Wilmington Trust, National Association, as Trustee, for the Benefit of the Holders of CoreVest American Finance 2019-1 Trust Mortgage Pass-Through Certificates (the "**Lender**") in the above-captioned case of Monticello Horizon Legacy, LLC (the "**Debtor**" or the "**Borrower**"), by and through undersigned counsel, hereby submits this objection to the *Motion to Authorize Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Pursuant to 11 U.S.C. § 361 Fixing Adequate Protection Payment Amount to Secured Creditor and for other and Further Related Relief With Points of Law* [Docket No. 25] (the "**Cash Collateral Motion**"). In support of this Objection, the Lender respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Court should deny the Cash Collateral Motion for ---- simple reasons: First the Cash Collateral Motion is not supported by a single fact, just an unsworn assertion by Debtor's counsel.  Indeed, the Debtor has not filed a single sworn statement in this entire Bankruptcy case, with the exception of filing four monthly operating supports that are purportedly sworn to by Esther Loeffler.  This failure, in and of itself, is sufficient to deny the Cash Collateral Motion in its entirety.

2.      Second, the Debtor has failed to establish that Lender is adequately protected, offerin*g, in the alternative to its base-line stance of no payments to the Lender*, adequate protections payments *of a mere $1,500.00 per month*.  Likewise, the Debtor has failed to provide a shred of evidence as to the value of the collateral, or to explain how the collateral for a loan that was made two years before this case was filed, has dropped below the face amount of the loan.

3.      And if these failures were not enough, the deficiencies highlighted in the Trustee Motion[1] serve to support the Lender's entitlement to substantive protection in the form of common-place cash collateral payments for assets such as the Properties.  The Debtor's proposed budget lacks any substantive information, provides little meaningful detail as to its income, such as how many units are occupied, whether any security deposits are being drawn upon, and fails to identify actual expenses on a property-level.

---

[1] Lender filed the *Motion of Wilmington Trust, National Association to Appoint a Chapter 11 Trustee* [Docket No. 28] (the "**Trustee Motion**"). Relevant here, the Trustee Motion details the Debtor's actions and inactions during the Chapter 11 Case which support the appointment of a chapter 11 trustee pursuant to Bankruptcy Code section 1104(a). Attached to the Trustee Motion was the *Declaration of Michael J. Smith in Support of the Motion of Wilmington Trust, National Association to Appoint a Chapter 11 Trustee* (the "**Smith Declaration**") which is incorporated herein by reference.

4.      For these reasons further detailed below, the Lender objects to the Cash Collateral Motion.  However, the Lender will consent to the Debtor's use of cash collateral under the Proposed Stipulated Order and monthly adequate protection payments of $15,513.78.

## BACKGROUND

### I.      Loan Documents and Prepetition Defaults

5.      The Debtor is the owner and operator of real estate located in Sullivan County, New York (collectively, the "**Properties**").

6.      The Lender is the owner and holder of the loan ("**Loan**") evidenced by that certain Promissory Note dated June 29, 2018 and executed by the Debtor in favor of CoreVest American Finance Lender, LLC ("**Original Lender**"), in the original maximum principal amount of $2,058,700.00 (as amended, restated, modified, and assigned, the "**Note**"). The terms and conditions of the Loan are set forth in that certain Loan Agreement (the "**Loan Agreement**") dated as of June 29, 2018.  Among other things, the Loan Agreement required that the Borrower repay the Loan by making monthly payments of principal and interest in the amount of $12,915.13. The final payment was to be due on July 9, 2023. The Loan Agreement provides for interest at a rate of 6.33 percent per annum.

7.      In connection with the Loan, Esther Loeffler (the "**Guarantor**" or the "**Pledgor**") executed (i) that certain Pledgor Guaranty (the "**Pledge Guaranty**"), pursuant to which the Pledgor guaranteed certain amounts owed under the Note, as further described in the Pledge Guaranty and (ii) a certain Pledge Agreement (the "**Pledge Agreement**") dated as of June 29, 2018 and executed by the Pledgor, pursuant to which the Pledgor pledged all of its right, title and interests in, to and under the Borrower Equity Interests (as defined in the Pledge Agreement).

8.      In order to secure the indebtedness owed in connection with the Loan, the Borrower executed that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture

Filing dated as of June 29, 2018 (as assigned to the Lender and amended from time to time, the "**Security Instrument**"). Under the Security Instrument, the Lender has a lien on and security interest in certain real property, and improvements thereon, and certain personal property associated therewith (collectively, the "**Collateral**").

9.      The Lender is the current holder and owner of the Note, the Loan Agreement, the Pledge Guaranty, the Security Instrument, the Pledge Agreement, and all other documents and instruments further evidencing, securing, or executed in connection with the Loan (collectively, the "**Loan Documents**").

10.      The Borrower failed to make payments as and when required under the Note and other Loan Documents, and, accordingly, an event of default occurred. On February 11, 2020, due to the event of default the Lender sent a letter to the Borrower electing to accelerate the entire debt owed under the Note (the "**February 11 Letter**"). The February 11 Letter also revoked the Borrower's license to receive, collect, and make use of rents, profits, and income of any type related to the Properties (collectively, the "**Rents**").

11.      On February 27, 2020, the Lender delivered to the Borrower and the Guarantor a notification of disposition of collateral pursuant to which the Lender provided notice to the Borrower and Guarantor that Lender intended to conduct a sale of the Borrower equity interests on March 30, 2020. The sale did not take place due to COVID-19. Thereafter, the Lender and the Borrower attempted to negotiate a forbearance agreement, but were unable to come to consensual terms. The Lender re-noticed a proposed disposition of collateral for June 25, 2020.

## II.      The Chapter 11 Case and Cash Collateral Motion

12.      On the eve of the UCC sale, June 24, 2020 (the "**Petition Date**"), the Borrower filed a voluntary petition for relief under chapter 11 (the "**Petition**") commencing the Chapter 11 Case. As of the Petition Date, Debtor was indebted to the Lender in the amount of at least

$2,595,957.46 (the "**Prepetition Indebtedness**") which was comprised of: principal of $2,029,540.17, accrued and unpaid interest of $164,946.88, late charges in the amount of $32,066.34, prepayment premium in the amount of $369,404.07, plus other costs, expenses, and fees of collections.[2]

13.    On July 8, 2020, the Debtor filed its schedules of assets and liabilities (the "**Schedules**") and statement of financial affairs (the "**SOFA**"). *See* Docket No. 10. The Debtor listed the value of the Properties at $2,018,630.00.

14.    The Lender and the Debtor negotiated the form of a cash collateral order, whose terms were agreed to in September 2020. A copy of that order is attached hereto as <u>Exhibit A</u> (the "**Proposed Stipulated Order**"). Only two issues prevented the presentment of the Proposed Stipulated Order to the Court. The first was how to address the approximately $46,711.64 the Lender paid (the "**Advanced Taxes**") for underfunded tax escrows to avoidance penalties. The second was the amount of monthly adequate protection payments the Lender was owed. After negotiations stalled, the Debtor filed the Cash Collateral Motion.

15.    On September 16, 2020 (the "**September 16 Letter**"), the Debtor sent the Lender a letter indicating that the Lender was undersecured, and, as such, pursuant to *U.S. Savings Assoc. of Texas v. Timber of Inwood Forest*, 484 U.S. 365 (1988), the Lender was not entitled to postpetition interest.  The September 16 Letter offered, as adequate protection to the Lender: (1) payment of the tax escrow deficiency; (2) postpetition replacement liens; and (3) securing of and payment of insurance policies on the Collateral.

---

[2]  *See* Proof of Claim No. 2.

## THE LENDER'S OBJECTIONS TO CASH COLLATERAL

16.    For many of the reasons set forth in the Trustee Motion and the Smith Declaration, the Lender objects to the Cash Collateral Motion as it does not adequately protect the Lender's interest in the collateral.

17.    First, the Debtor has failed to properly administer the Chapter 11 Cases. For example, exclusivity under Bankruptcy Code section 1121 expired on October 22, 2020 (the "**Exclusivity Deadline**"). The Debtor did not file a plan or seek to extend the Exclusivity Deadline. Debtor has also not provided any guidance as to a possible exit strategy. Further, as noted by the U.S. Trustee at a previous hearing, the Debtor's monthly operating reports have inconsistencies and have been filed late. Smith Declaration, ¶ 14.

18.    Second, the Lender has repeatedly requested certain routine reporting from the Debtor, who has not provided it. This information included: tenant names; copies of tenant leases; lease start dates; history of tenant payments since January 2020; and location of security deposits and any security deposit use. This information is critical for the Lender to evaluate the properties' performance and monitor for any potential diminution in value of the collateral, which is why this information was included in the Proposed Stipulated Order. The Lender has no visibility into the Debtors' postpetition operations. This lack of transparency and responsiveness is gravely concerning to Lender. Smith Declaration, ¶ 15.

19.    Third, the Debtor, despite repeated requests, has also failed to provide basic and consistent income and expense data. This has made it more difficult for the Lender to evaluate the Cash Collateral Motion. The Debtor has also failed to make a single adequate protection payment in the five months since the Petition Date. Smith Declaration, ¶ 16.

20.    Fourth, the Debtor has failed to properly maintain a number of the Properties, which are the Lender's collateral. As detailed in the Smith Declaration and accompanying exhibit, the

Debtor has failed to properly maintain certain Properties, which neglect and/or mismanagement could result in an impairment of the collateral. Smith Declaration, ¶ 17.

21.     Fifth, the Debtor has failed to make property tax and insurance escrows as provided in the Loan Documents, resulting in the Lender advancing such property and insurance escrows to avoid penalties and interest from accruing. Thus far, the Lender has advanced approximately $46,000.00 to cover tax escrow shortfalls. Smith Declaration, ¶ 18.

22.     Finally, on one hand, the Debtor has asserted that it will sell what the Lender believes are the three most valuable Properties, yet, refuses to disclose which Properties will be sold first. The Debtor also has failed to submit evidence indicating an impairment in the value of the Properties. Smith Declaration, ¶ 19.

## ARGUMENT

## I.     No Factual Basis For the Use of Cash Collateral Has Been Established

23.     At the outset, the Lender notes that no evidence has been submitted in connection with the Cash Collateral Motion. The Debtor contends, with no evidence that:

    a.    the Lender "is an undersecured creditor." Cash Collateral Motion, ¶ 4;

    b.    the Debtor requires the use of cash collateral "to meet the monthly obligations associated with the operation of the debtor's properties, including but not limited to, property taxes, insurance, repairs & maintenance, water/sewer, garbage and landscaping." Cash Collateral Motion, ¶ 7;

    c.    "[t]he inability to use cash collateral would undoubtedly cause irreparable harm to the debtor's operation and to the bankruptcy estate. The use of cash collateral is required to fund only the day to day operations of the debtor and, unless this Court authorizes such use, the debtor will be unable to meet its payroll or other ordinary course business expenses which are necessary to keep 'the doors open' as well as to maintain the value and integrity of the debtor's assets and its ongoing operations.", Cash Collateral Motion, ¶ 7;

    d.    "[w]ithout the use of the accounts and inventory, the debtor will be unable to operate its business and effectuate a reorganization. Should this Court

        deny the debtor's authorization to use cash collateral, this Chapter 11 case will no doubt fail." Cash Collateral Motion, ¶ 8;

e.      the value of the Lender's lien is not decreasing because "[t]he debtor maintains the investment rental properties and there is no evidence that the fair market value of the real properties is decreasing. If anything, the fair market value of real property in Sullivan County is rising. However, to the extent that this Court determines that the value of the property is depreciating, the debtor is willing to provide [the Lender] adequate protection payments during the period before its Chapter 11 Plan is confirmed." Cash Collateral Motion, ¶ 12; and

f.      "[t]he debtor simply cannot afford to make greater monthly payments to [the Lender]." Cash Collateral Motion, ¶ 13.

24.      The Debtor has not filed a declaration to accompany the Cash Collateral Motion, nor has it provided any basis upon which to grant the Cash Collateral Motion. Therefore, the Cash Collateral Motion should be denied because the Debtor has not established the proper evidentiary record. *See* Fed. R. Bankr. P. 4001 Advisory Committee Note (1987) (noting that a motion for authority to use cash collateral shall include "the facts demonstrating the debtor's need to use cash collateral"). The Cash Collateral Motion simply asks for authority to use cash collateral because the Debtor needs it. This is an unsupported assentation which is clearly not sufficient. *See, e.g.*, *In re Mosello*, 195 B.R. 277, 292 (S.D.N.Y. 1996) (finding there were "no hard facts on which to base a finding of adequate protection in this case" because "[a] finding of adequate protection should be premised on facts, or projections grounded on a firm evidentiary basis"). The Debtor is asking this Court to bear the risk that the value of the Properties will not decline, which, the Lender cannot properly monitor without sufficient information reporting.

25.      The Debtor has not established the valuation of the Properties. With no evidence, the Schedules assert that the value of the properties is $2,018,630.00. In connection with executing the Loan Documents, appraisals were conducted. At that time, the Properties were valued at $2,941,000.00, meaning that the Lender is oversecured. Smith Declaration, ¶ 12. Neither the

Schedules,[3] the Cash Collateral Motion, or any other pleadings in this Chapter 11 Case establish that the value of the Properties are now $2,018,630.00.

## II.    <u>The Debtor Has Not Met its Burden that the Lender is Adequately Protected</u>

26.    The Cash Collateral Motion should be denied because the Debtor has not proposed to adequately protect the Lender's interests.

27.    Bankruptcy Code section 363(a) defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest." A secured creditor is entitled to adequate protection of its interests. 11 U.S.C. § 363(e). Pursuant to Bankruptcy Code section 363(c)(2),

> The trustee [or debtor in possession] may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> > (A) each entity that has an interest in such cash collateral consents; or
> >
> > (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

28.    "[T]he purpose of providing adequate protection is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy." *In re Residential Capital, LLC*, 501 B.R. 549, 594 (Bankr. S.D.N.Y. 2013) (quoting *In re WorldCom, Inc.*, 304 B.R. 611, 618–19 (Bankr. S.D.N.Y. 2004)). Bankruptcy Code section 361 provides three specific examples of adequate protection: periodic cash payments; providing additional or replacement liens; or other relief that will result in the "indubitable equivalent." Bankruptcy Code section 363(p) provides that "[i]n any hearing under this section— (1) the trustee [or the debtor in possession] has the burden of proof on the issue of adequate protection; and (2)

---

[3]  In fact, the "Valuation method used for current value" portion of the Schedules was left blank.

the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." *See   In re 680 Fifth Ave. Assocs.*, 154 B.R. 38, 43 (Bankr. S.D.N.Y. 1993) ("the burden, as with every other situation in which the concept of adequate protection of an undersecured lender's interest arises, is on the debtor in possession to prove that the secured creditor will receive the value for which he bargained").

29.     The Cash Collateral Motion and attached budget propose to make adequate protections to the Lender in the amount of $1,500.00 per month. The Debtor proposes no additional adequate protection and, unexplainably, continues to offer the Lender a worsening adequate protection package. The order attached to the Cash Collateral Motion does not adequately protect the Lender's interests.

30.     The Lender is entitled to the adequate protection package set forth in the Proposed Stipulated Order, including, among other things:

     a.     Adequate protection liens, Proposed Stipulated Order ¶ 5;

     b.     Financial reporting, Proposed Stipulated Order ¶ 10; and

     c.     Monthly adequate protection payments of $15,513.78, Proposed Stipulated Order ¶ 14.

31.     Such an adequate protection package is typical for this type of case. The Schedules and ¶¶ 3, 4, and 13 of the Cash Collateral Motion concede that the Lender has a valid first priority security interest in the Properties in the approximate amount of $2,595,957.46. Because the Lender is oversecured, it is entitled to postpetition interest. However, the Lender's equity cushion is not sufficient to provide adequate protection on its own. Moreover, as set forth in the Trustee Motion, the Debtor has been delinquent in filing monthly operating reports; refuses to provide the Lender with the information it deems necessary to evaluate the Cash Collateral Motion, a potential plan, or potential sale motion; and has forced the Lender to fund the Advanced Taxes.

32.    The Debtor's proposed budget is severely deficient. With regard to income, the Debtor provides no detail as to how many units are occupied, whether any security deposits are being drawn upon, or, really, any information. The expenses are also lacking as they are not detailed on a property-level.

33.    The Lender continues to believe that granting the Trustee Motion is necessary in this Chapter 11 Case because the Debtor has shown that its continued operation of the Properties jeopardize the value of the collateral. Even if the Court were to deny the Trustee Motion, it should deny the Cash Collateral Motion unless the Proposed Stipulated Order is entered.

## **CONCLUSION**

**WHEREFORE**, the Lender requests that the Court enter an order, substantially in the form of the Proposed Stipulated Order submitted in connection herewith.

Dated:    New York, NY
   November 24, 2020

Respectfully submitted,

**POLSINELLI PC**

*/s/ Jason A. Nagi*
Jason A. Nagi
600 Third Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jnagi@polsinelli.com

*Counsel to Wilmington Trust, National Association, as Trustee, for the Benefit of the Holders of CoreVest American Finance 2019-1 Trust Mortgage Pass-Through Certificates*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 24th day of November, 2020, he caused a true and correct copy of the foregoing *Notice and Motion* to be served electronically by ECF notification to Debtors' counsel, the U.S. Trustee, and all ECF participants in this case.


*/s/ Jason A. Nagi*
Jason A. Nagi

## **Exhibit A**

Proposed Stipulated Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
In re:                                              :
                                                    :        Chapter 11
      Monticello Horizon Legacy, LLC,              :
                                                    :        Case No.: 20-35665-cgm
                   Debtor.      :
-----------------------------------------------------------X   :

### INTERIM STIPULATED ORDER AUTHORIZING DEBTOR TO USE RENTS, PROFITS AND INCOME FROM PROPERTY PURSUANT TO SECTION 363 OF THE UNITED STATES BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001

This Interim Stipulated Order (the "**Stipulation**" or "**Order**") is made by and between

Debtor Monticello Horizon Legacy, LLC ("**Monticello**" or the "**Debtor**") and Wilmington Trust,

National Association, as Trustee, for the Benefit of the Holders of Corevest American Finance

2019-1 Trust Mortgage Pass-Through Certificates (the "**Lender**"), in order to avoid immediate

and irreparable harm to Debtor's estate, and is an interim stipulation only, pending a final hearing

on Debtor's right to make use of the rents, profits, and income identified below.

Debtor has requested that Lender consent to the use of certain rents, profits, and income

generated in connection with the operation of certain real property, and improvements thereon,

located in Sullivan County, New York, the legal description of which is contained in **Exhibit A**

attached hereto (collectively, the "**Premises**"). Debtor has further requested that Lender consent

to the Debtor's use of the Premises and to the use of certain personal property located at, or utilized

in connection with the operation of, the Premises (the "**Personal Property**").

The Parties having agreed to the entry of this Order, the relief granted hereby, and the terms

and conditions set forth herein, and on the basis of representations made and any evidence

presented to the Court and upon the record in these Chapter 11 proceedings, the Court finds and

determines that it is in the best interests of Debtor's estate and its creditors, and that there is good

cause to grant the relief herein provided. The Court finds that absent the relief provided herein, and in particular the authority herein granted to Debtor to use cash collateral, Debtor's estate would suffer immediate and irreparable harm. The Court finds that the notice hereof having been provided and sent is, under the circumstances, adequate and sufficient and complies with the requirements of Title 11, United States Bankruptcy Code (the "**Code**") §§ 102(1) and 363 and Federal Rule of Bankruptcy Procedure ("**Rule**") 4001, and any notice periods in excess thereof are hereby shortened to conform to the notices given herein. The Court further finds that the Parties have acted in good faith with respect to this order and that the relief requested and the terms and conditions set forth herein are proper, lawful, and in the best interests of Debtor's estate and its creditors.

## **RECITALS**

A.      On June 24, 2020 (the "**Petition Date**"), Debtor commenced this voluntary case under the Code (this "**Chapter 11 Case**").

B.      The Lender asserts that as of the Petition Date, Debtor was indebted to Lender for certain indebtedness and obligations (the "**Indebtedness**"), which includes the unpaid principal amount of $2,029,540.17, accrued and unpaid interest in the amount of $164,946.88, late charges in the amount of $32,066.34, a prepayment premium in the amount of $369,4040.07, plus costs, expenses, fees of collection, and such other sums as are created, evidenced, or secured by those certain documents, including, but not limited to, the following documents evidencing, securing and/or executed in connection with the indebtedness owed by Debtor to Lender (all of which, together with any documents referred to therein or which were executed pursuant thereto, are herein referred to collectively as the "**Loan Documents**"):

(1)      Promissory Note, dated June 29, 2018 (the "**Note**") in the original principal amount of $2,068,700.00;

(2)     Loan Agreement dated June 29, 2018 (the "**Loan Agreement**")

(3)     Sponsor Guaranty with Esther Loeffler ("**Guarantor**") dated as of June 29, 2018 (the "**Guaranty**");

(4)     Pledgor Guaranty dated as of June 29, 2018 (the "**Pledgor Guaranty**");

(5)     Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of June 29, 2018 (the "**Mortgage**"); and

(6)     Pledge Agreement dated as of June 29, 2018 (the "**Pledge Agreement**").

Debtor has not consented, or otherwise agreed, to the amounts described herein and expressly reserves all of its rights to determine the extent and validity of the liens asserted by Lender.

C.     The Indebtedness is secured by various liens, pledges, assignments, mortgages, and security interests described and granted or conveyed in or evidenced or perfected by one or more of the Loan Documents (the "**Liens**") in, to, and against all of Debtor's assets, including, but not limited to, liens, pledges, assignments, mortgages, and security interests in, to, and against the Premises and the Personal Property, (the Premises, the Personal Property, and all other items and types of property are hereinafter collectively referred to as the "**Collateral**").

D.     The Liens were granted, conveyed, and properly perfected by certain of the Loan Documents.

E.     The term "**Collateral**," as used herein, in addition to the above-referenced property, shall also include, inter alia, "**Cash Collateral**" as that term is defined in the Bankruptcy Code, including, without limitation, Bankruptcy Code section 363. Cash Collateral, as that term is defined in the Bankruptcy Code, including, without limitation, Bankruptcy Code section 363, includes, but is not limited to, all of Debtor's prepetition and postpetition cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash, cash equivalents, proceeds, products, rents, or profits subject to the Liens, including all prepetition and postpetition

rents, leases, accounts, accounts receivable, and proceeds derived from the Premises. All Cash Collateral is subject to the Liens, and Lender has an interest in Cash Collateral.

F.      As of the Petition Date, the Lender asserts that the Liens are first priority liens as to all the Collateral.

G.      The Debtor and Lender have agreed, pursuant to Bankruptcy Code section 363(c), to the limited use of the Cash Collateral in accordance with the following terms.

H.      The Debtor has agreed to grant to the Lender as adequate protection for the use of Cash Collateral, a postpetition security interest in and to all property arising from the Premises, and an allowed administrative expense claim in an amount not greater than the un-repaid cash collateral used by the Debtor.

I.      Debtor and Lender, without waiving any rights between them, desire that the rents, income and profits from the Premises[1] be used to preserve and maintain the Premises and the Personal Property, in accordance with the terms of this Stipulated Order.

J.      This Court has jurisdiction with respect to Debtor's proposed use and expenditure of such rents, profits and income pursuant to 28 U.S.C. §§ 157 and 1334.

K.      Due and adequate notice of the hearing thereon has been provided to Debtor's 20 largest unsecured creditors and to the United States Trustee, in accordance with Rule 4001(b).

## STIPULATION AND ORDER

Accordingly, Debtor and Lender hereby stipulate as follows, and IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      Expenses. Debtor may use Cash Collateral of the Lender to pay for the ordinary and necessary postpetition operating expenses as categorized in the proposed monthly budget

---

[1] For purposes of this Stipulation, the parties are using the phrase "rents, profits and income" to signify income of all types generated in connection with the operation of the Premises (the "**Rents**").

attached hereto as **Exhibit B** (the "**Budget**"). Ordinary and necessary postpetition expenses shall be defined as those items set forth in the monthly Budget and shall be amounts which do not exceed the amount specified therein for each category of expenses by more than ten percent (10%). The Debtor shall obtain the Lender's written permission before making or incurring any obligation or making or incurring any expenditures from the Cash Collateral Accounts, as hereinafter defined, in excess of ten percent (10%). If the Debtor and the Lender cannot reach an agreement with respect to whether the Debtor shall be allowed to use Cash Collateral of the Lender for expenses not included in the categories included in the proposed monthly Budget, the Debtor may submit the matter to the Court by motion for determination of the issue if the Lender fails to respond to a written request within five (5) business days after such written request is received by the Lender and the Lender's counsel, or the Lender denies a written request within five (5) business days after such written request is received by the Lender and the Lender's counsel. Lender's Cash Collateral shall not, directly or indirectly, be used to pay professional administrative expenses of the Debtor.

2. <u>Operating Budget</u>. To the extent the Debtor seeks to modify the Budget, beginning on the 15th day of the month after this Order is granted and continuing on the 15th day of each month thereafter, Debtor shall deliver a proposed monthly budget in the form of **Exhibit B** (each a "**Monthly Budget**") to Lender that sets forth all anticipated monthly postpetition revenues and expenses that will be paid in the operation of Debtor's business during the next successive month. Each Monthly Budget shall be delivered to Lender on or before the 15th day of the month prior to the month for which the Monthly Budget is proposed. After receipt of each Monthly Budget, Lender shall have five (5) business days to approve or object to the Monthly Budget. Any objection by Lender shall be in writing and shall specify the particular item(s) and amount(s) objected to and reasons for the objection. If Lender timely objects to a Monthly Budget or item or amount therein,

unless Debtor and Lender agree otherwise, Debtor may not make any expenditure of the Rents objected to by Lender unless and until Debtor obtains the Court's authorization to make such expenditure (the Monthly Budgets approved by Lender or so approved by the Court over Lender's objections being referred to herein as the "**Approved Monthly Budgets**"). Debtor may seek authority to make such expenditures on an expedited basis.

3.    Insiders. No Cash Collateral shall be used in payment of any kind whatsoever to Debtor (except as may be provided in the annexed Budget), or the relatives of the principals or any of their representatives, or any insiders as that term is defined by 11 U.S.C. §101(31).

4.    Capital Improvements. The Debtor shall not make any capital improvements to the Premises absent prior written consent of the Lender.

5.    Adequate Protection Liens. As adequate protection to the Lender for the Debtor's use of the Lender's Cash Collateral, and to protect Lender against any diminution in the value of its Collateral (including Cash Collateral), Lender is hereby granted a valid, binding, enforceable and perfected continuing replacement first-priority lien and security interest in and on any and all real and personal property, tangible and intangible, equipment, accounts receivable or rents, income and profits of the Debtor, arising from the Premises, including all postpetition contract rights, agreements or the like, and all other assets of the Debtor and the proceeds thereof, of any kind or nature, wherever located, now owned or hereafter acquired, to the same extent, validity and priority held by Lender on the Filing Date, whether or not constituting pre-petition collateral or postpetition collateral, including but not limited to, the collateral set forth in **Exhibit C** (collectively referred to herein as the "**Estate Collateral**"). Such lien is subject only to: (i) the fees of the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) any valid, duly perfected, unavoidable liens existing at the time of the Bankruptcy filing having priority over the liens

asserted by Lender under the Mortgage; and (iii) no more than $5,000 for the commissions, fees

and expenses of any chapter 7 trustee appointed in this case, provided, however, that none of those

funds may be used to challenge or object to Lender's claims and liens, and provided further, that

Lender has no liability for, or obligation to advance such funds. Notwithstanding the foregoing,

the Debtor and Lender acknowledge that the continuing replacement first-priority lien and security

interest described in this provision shall not attach to any avoidance actions or claims or causes of

action under Bankruptcy Code sections 544, 545, 547, 548 and 549 (except liens on recoveries

under section 549 on account of collateral as to which the Lender has a postpetition lien), and the

proceeds thereof, or a superpriority administrative claim payable from the proceeds of such claims

and causes of action.

6.      Administration Expenses. No costs or expenses of administration or of preserving

or disposing of the Collateral, including such administrative or other expenses of the kind specified

in Bankruptcy Code sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726, or

otherwise, which have been or may be incurred in these proceedings, any proceedings following

conversion of these proceedings pursuant to Bankruptcy Code section 1112, or in any other

proceeding shall be assessed against Lender, the Collateral, or the Cash Collateral.

7.      Security Interest. This Order shall be sufficient and conclusive evidence of the

priority, perfection and validity of all of the security interests in and liens upon the property of the

Estate of the Debtor granted to Lender as set forth herein, without the necessity of filing, recording

or serving any financing statements or other documents which may otherwise be required under

federal or state law in any jurisdiction or the taking of any other action to validate or perfect the

security interests and liens granted to Lender in this Stipulation and the Loan Documents. If Lender

shall, in its discretion, elect for any reason to file any such security interests and liens, the Debtor

is hereby authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon Lender's request and the filing, recording or service thereof (as the case may be) of such financing statement or similar documents shall be deemed to have been made at the time of and on the Filing Date. Lender may, in its discretion, file a copy of this Stipulation in any filing or recording office in any County or other jurisdiction in which the Debtor has real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Stipulation.

8.      <u>Other Security Interests</u>. So long as this Order is in effect, Debtor shall not grant or attempt to grant to any person or entity, other than Lender, a security interest in or lien on the Premises or any property that secures the Indebtedness, whether pursuant to Bankruptcy Code section 364 or otherwise.

9.      <u>Expense of Preserving Collateral</u>. Debtor waives any and all right to assess, against Lender, the Premises, or any assets of Debtor that secure the indebtedness owed by Debtor to Lender, any costs or expenses of preserving or disposing of the Premises or such assets, whether pursuant to Bankruptcy Code section 506(c) or otherwise.

10.     <u>Financial Reporting</u>. As additional adequate protection, Debtor shall provide to Lender, no later than the 20th day of each month:

      a.      all reports and documents required to be filed with the Office of the United States Trustee for the previous month;

      b.      a report of cash collections, outstanding accounts receivable, and expenditures as of the end of the previous month;

      c.      an income and expense statement; and

      d.      an itemized schedule of all tenants, including name, unit, monthly rent amount; lease start and end dates, and the amount of any security deposit tendered.

11.     The foregoing reporting requirements shall supplement and be in addition to those financial reporting requirements contained in the Loan Documents, all of which shall remain in full force and effect during the course of this Chapter 11 Case, and with which Debtor shall comply during the course of this Chapter 11 Case.

12.     <u>Additional Financial Reporting</u>. As additional adequate protection, Debtor shall within 20 days after the end of each month, commencing on or before August 20, 2020, provide to Lender a report showing the actual revenues and expenses for that month. The report shall list such items in the same manner as set forth in the Approved Monthly Budget in order to permit a comparison of such actual revenues and expenses for the applicable month with the budgeted amounts for such revenues and expenses for the applicable month.

13.     <u>Escrow</u>. In addition to the payments required by the Note, Debtor agrees to pay Lender such sums as Lender may from time to time estimate will be required to pay, at least one month before delinquency, the next due taxes, assessments, insurance premiums, and similar charges affecting the Premises, less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such taxes, assessments and premiums will be delinquent, such sums to be held by Lender without interest or other income to Debtor to pay such taxes, assessments and premiums. Should this estimate as to taxes, assessments and premiums prove insufficient, Debtor upon demand agrees to pay Lender such additional sums as may be required to pay them before delinquent.

14.     <u>Adequate Protection Payments</u>. As additional adequate protection, Debtor shall pay to Lender on a monthly basis, pursuant to Bankruptcy Code sections 361, 362 and 363(e), the consisting of interest only, based upon the proposed value of the Premises of $2,941,000 at 6.33% interest (in the monthly amount $15,513.78 The first two payments shall be due on September 1,

2020, with subsequent payments due on the 25th day of each month (or, if that date for any given month falls on a day other than a business day, the next business day following the 25th day of such month) during the period in which this Order remains in effect.

15.    <u>Administrative Expense Priority</u>. The Lender, as adequate protection for the use of Cash Collateral, is granted a postpetition security interest in and to all property arising from the Premises, and an allowed administrative expense claim in an amount not greater than the un-repaid cash collateral used by the Debtor.

16.    <u>Lender's Inspection and Access Rights</u>. Upon reasonable notice to Debtor, Debtor shall permit Lender and Lender's agents reasonable access to the Premises and to the books and records of Debtor.

17.    <u>Cash Collateral Accounts</u>. The Debtor shall immediately set up and maintain separate and segregated accounts for all revenue generated by the Collateral, which segregated accounts shall include all gross revenue and cash collateral existing as of the Petition Date, or collected since the filing of this bankruptcy case (the "**Cash Collateral Account**"). The Cash Collateral Account will be set up and maintained at a depository bank that is approved by the Southern District of New York U.S. Trustee's office. Information regarding the Cash Collateral Account, including the bank name, the address and the account numbers will be provided to the Lender by the Debtor immediately upon execution of the Stipulation. The Debtor agrees to disburse funds from the Cash Collateral Account only in accordance with the terms of this Stipulation.

18.    <u>Comingling Prohibition</u>. The Debtor is prohibited from commingling the Cash Collateral with monies from any other sources. Cash collateral is to remain in the Cash Collateral Accounts until expended under the terms of the Stipulation.

19.     <u>Effective Period</u>. This Order shall remain in effect until the final hearing of the Debtor's motion for use of Cash Collateral, or until further Order of this Court, but the rights and interests granted to Lender under this Order, specifically including the rights and interests of Lender and waivers by Debtor under paragraph 9, are continuing. Nothing in this paragraph 19 prohibits Lender in any manner from seeking termination of the automatic stay under Bankruptcy Code section 362 or any other relief to which Lender may believe it is entitled, including any relief which would result in the cessation of Debtor's use of the Rents and/or termination of the effects of this Stipulated Order.

20.     <u>Reservation of Rights</u>. The Lender expressly reserves its right (a) to claim and assert that it is not adequately protected by this Stipulation; and (b) to move to seek to permit a custodian to continue in possession, custody or control of the Premises and object to the turnover of property by such custodian pursuant to Bankruptcy Code section 543(d) (a "**Turnover Motion**"). In the event that a Turnover Motion is granted and a custodian over the Premises is appointed, this Order will automatically terminate and Debtor will have no right to the possession or use of Cash Collateral. The Debtor is hereby estopped from claiming, asserting, or arguing that the Lender's willingness to enter into this Stipulation is evidence of adequate protection under Bankruptcy Code sections 361 or 362.

21.     <u>Binding on Successors and Assigns</u>.  The provisions of this Stipulated Order shall inure to the benefit of Debtor and Lender, and they shall be binding upon the Debtor and its successors and assigns, including any trustee or any other representative now or hereafter appointed as a legal representative of Debtor, this Estate or any Estate under any other chapter of the Code (following conversion of this case or otherwise), shall be binding on Lender and its successors and assigns, and shall be binding on all creditors and other parties in interest.

22. <u>Diminution of Value of Collateral During Bankruptcy</u>. Lender shall be entitled to seek the protection of Bankruptcy Code section 361 with respect to diminution of Lender's Collateral in the event that its Collateral decreases in value during the pendency of this Chapter 11 Case, in the event that this Stipulation or any authorization contained herein is vacated, reversed or modified on appeal or otherwise by any court of competent jurisdiction.

23. <u>Survival of Provisions</u>. The provisions of this Stipulation and any actions taken pursuant hereto shall survive entry of any order dismissing this case, converting the Debtor's Chapter 11 Case to one under Chapter 7, or which may be entered confirming or consummating any plan of reorganization of the Debtor's estate, and the terms and provisions of this Stipulation as well as the priorities in payment, liens, and security interests granted pursuant to this Stipulation shall continue in this or any superseding cases under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Stipulation until all indebtedness due Lender is indefeasibly satisfied and discharged.

24. <u>Debtor in Possession</u>. Debtor shall continue to operate its business in the ordinary course of business and in accordance with the provisions of this Stipulated Order and the Code.

25. <u>Relationship Between Debtor and Lender</u>. The Lender is not an insider of the Debtor. The Lender contends that that no basis exists on which to avoid or disallow all or any portion of the Lender's claims or liens. Accordingly, the Debtor believes that the Debtor and the Lender have negotiated in good faith and at arms-length. Any subsequent modification, vacatur or stay of the Order regarding the Stipulation shall not affect the validity or enforceability of any security interest, lien or priority authorized or created by such Order prior to the effective date of such modification, stay, vacatur or final order.

26.    <u>Insurance</u>. The Debtor shall maintain property, casualty, and liability insurance coverage as provided in the Mortgage in connection with the Collateral. Debtor shall promptly furnish the Lender with proof of such insurance. In the event that the insurance coverage for the Collateral is allowed to lapse for any reason, Debtor agrees that the Lender may, notwithstanding any applicable provision of the Code, force-place insurance coverage. The Debtor further agrees that in the event that the Lender is required to obtain force-placed insurance coverage, the Lender may provide the Debtor with a demand to reimburse the Lender for such coverage, and if, five (5) business days following the receipt of such notice, the Debtor has not reimbursed the Lender for such insurance coverage, the Lender may seek relief, on five (5) days' notice from the Bankruptcy Court, from the automatic stay of Bankruptcy Code section 362(a) to commence and complete foreclosure of the Collateral.

27.    <u>Taxes</u>. The Debtor shall remain current on all postpetition tax obligations arising out of its ownership and/or operation of its business. Debtor agrees that evidence of payment of all postpetition tax obligations shall be tendered immediately to Lender upon the payment thereof. In the event that Debtor fails to make any required postpetition tax payment, the Lender may advance such funds and seek immediate reimbursement from Debtor notwithstanding any applicable provision of Title 11 of the United States Bankruptcy Code. In the event that the Lender advances such tax payments and Debtor does not reimburse the Lender within five (5) business days of having received notice thereof, the Lender may proceed on five (5) days' notice for relief from the automatic stay of Bankruptcy Code section 362(a), to commence and complete a seizure of the Collateral.

28.    <u>Termination</u>. Additionally, unless the Lender otherwise agrees in writing, the termination date of this Stipulation ("**Termination Date**") shall be defined as the earliest of: (a)

the date an order is entered by the Court granting a motion to convert the above-captioned case to a case under Chapter 7 of the Code; (b) the date an Order is entered by the Court granting the Lender, or any other Creditor, relief from the automatic stay in order to initiate or continue foreclosure, seizure, repossession or other proceedings against the Collateral; (c) the date an order is entered by the Court granting a motion to dismiss the above-captioned case; (d) the date an order is entered by the Court granting a motion to appoint a trustee in the above-captioned case; (e) the date on which the order approving the Stipulation is reversed, revoked, modified, amended, stayed, rescinded or supplemented; (f) the date on which the Debtor shall grant or file an application or motion with the Court for approval of any security interest in or lien on the assets of the Debtor or its estate senior to the Lender's security interest in or lien on the assets of the Debtor or its estate senior to the Lender's security interest or liens other than the security interest and liens created by the order approving this Stipulation; (g) the date on which any party files any objection to the validity, amount, allocability, unavoidability, perfection or priority of the Lender's prepetition, security interest or liens as set forth herein; or (h) the date on which the Debtor files a plan of reorganization or disclosure statement that impairs (as defined by Bankruptcy Code section 1124) the Lender's rights under the Loan Documents.

29.    <u>Charges</u>. The rights of the Lender to continue to charge the Debtor with interest, reasonable fees and expenses, as provided in the Loan Documents for the period covered by this Order, and of the Debtor to object, are preserved. During the term of the Stipulation, the Lender may continue to charge the Debtor with interest, reasonable fees and expenses as provided in the Note. During the term of the Stipulation, the Debtor shall fully perform and comply with all of its covenants and agreements set forth in the Loan Documents, which are hereby reaffirmed and ratified by the Debtor.

30.    Lender's Rights. Nothing contained herein shall affect or impair the rights, claims or remedies of the Lender or of the Debtor under the Code, or otherwise, including the right of the Lender to seek relief from the automatic stay under Bankruptcy Code section 362.

31.    Waiver. The Lender shall have the right to waive any of the rights, remedies, or powers granted in the Stipulation and the Order hereon. Delay in or failure to exercise any of the Lender's rights, remedies or powers shall not subject the Lender to liability or a waiver of any such rights, remedies or powers in the future.

32.    Default. Failure by the Debtor to fulfill any of the obligations set forth in this Stipulation shall constitute an event of default ("**Event of Default**"), including, but not limited to, making all payments set forth in paragraph 13 herein. Should an Event of Default occur, Lender may file and serve by mail or by facsimile, if such facsimile number is available, an affidavit (the "**Lender Affidavit**"), identifying the Event(s) of Default, upon Debtor's counsel, the Office of the U.S. Trustee and all parties having filed a Notice of Appearance in this case (the "**Appearing Parties**"). The Debtor shall have five (5) business days to either cure the Event of Default or the Debtor or any other party provided with notice in accordance to this decretal paragraph may file a counter-affidavit (the "**Counter-Affidavit**") opposing the allegations raised in the Lender Affidavit with specificity. If (a) a Counter-Affidavit is filed, or (b), within five (5) business days after the service of the Lender Affidavit, the Debtor fails to cure the Event of Default or (c) if the Debtor or any of the other Interested Parties fail to serve upon counsel for Lender a Counter-Affidavit and file the Counter-Affidavit with the Court, then a hearing will be scheduled at the earliest possible convenience of the Court on no less than seven (7) days written notice to the Debtor, Lender, the Appearing Parties, and the Office of the U.S. Trustee (the "**Interested Parties**") to determine whether an Event of Default has occurred and whether Lender is entitled

to relief from the automatic stay enabling it to take possession of its Collateral. Nothing contained herein shall be construed to preclude Lender from filing a motion seeking relief from the automatic stay or from seeking any other appropriate relief in the Debtors' Bankruptcy cases at any other time during this Case. The parties agree that time is of the essence with respect to all terms and conditions of this Stipulation.

33.    <u>Challenge Period</u>. The Debtor and any party in interest shall have forty five (45) days (or such longer period as the Debtor may obtain for cause shown before the expiration of such period) from the date of entry of this Interim Order to investigate the facts and bring and appropriate proceedings with regard to the Debtor's stipulation (if any, and at all) to the amount, validity, perfection, enforceability, priority and non-avoidability of any of Lender's claims and liens, and the lack of any defense thereto. In the event that no adversary proceeding or stipulation extending the time to commence an adversary proceeding challenging the perfection, extent or validity of Lender's pre-filing date lines are timely commenced as set forth herein, then such liens and/or mortgages shall be deemed valid and perfected liens.

34.    <u>Final Hearing</u>. The Court shall hold a Final Hearing to consider the Debtor's use of cash collateral on October 6, 2020 at 9:00 a.m.

35.      <u>Service</u>. The Debtor shall serve a copy of this Interim Order, via email, on Lender

by its counsel, Polsinelli PC, 600 Third Avenue, 42nd Floor, New York, NY 10016

jnagi@polsinelli.com, the 20 largest unsecured creditors; any counsel to any committee appointed

in the case; those parties having filed a notice of appearance and demand for service in the case;

and the Office of the United States Trustee, by not later than _____ 2020, at 3:00

p.m. The Debtor shall file an affidavit of service attesting to the service of this Order, by not later

than _____, 2020 at 5:00 p.m.

## **Exhibit A**

[Description of Land]

## **Exhibit B**

Budget
(see attached)

Exhibit C

## Exhibit C

## COLLATERAL

The term Collateral shall include all of Borrower's [1] estate, right, title, interest, claim and demand in and to the property in the county of Sullivan, state of New York, with street addresses listed on <u>Schedule 1</u> attached hereto (which addresses are provided for reference only and shall in no way limit the description of the real and personal property otherwise described herein), described as follows, whether now existing or hereafter acquired (all of the property described in all parts of this Exhibit is called the "**Property**"):

1.1    <u>Land and Appurtenances</u>. The land described on <u>Exhibit A</u> hereto, and all tenements, hereditaments, rights-of-way, easements, appendages and appurtenances thereto belonging or in any way appertaining, including without limitation all of the right, title and interest of Borrower in and to any avenues, streets, ways, alleys, vaults, strips or gores of land adjoining that property, all rights to water, water stock, drains, drainage and air rights relating to that property, and all claims or demands of Borrower either in law or in equity in possession or expectancy of, in and to that property; and

1.2    <u>Improvements and Fixtures</u>. All buildings, structures and other improvements now or hereafter erected on the property described in 1.1 above, and all facilities, fixtures, machinery, apparatus, installations, goods, equipment, inventory, furniture, building materials and supplies and other properties of whatsoever nature, now or hereafter located in or used or procured for use in connection with that property, it being the intention of the parties that all property of the character described above that is now owned or hereafter acquired by Borrower and that is affixed or attached to, stored upon or used in connection with the property described in 1.1 above shall be,

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Mortgage.

remain or become a portion of that property and shall be covered by and subject to the lien of this Security Instrument, together with all contracts, agreements, permits, plans, specifications, drawings, surveys, engineering reports and other work products relating to the construction of the existing or any future improvements on the Property, any and all rights of Borrower in, to or under any architect's contracts or construction contracts relating to the construction of the existing or any future improvements on the Property, and any performance and/or payment bonds issued in connection therewith, together with all trademarks, trade names, copyrights, computer software and other intellectual property used by Borrower in connection with the Property; and

      1.3     Enforcement and Collection. Any and all rights of Borrower without limitation to make claim for, collect, received and receipt for any and all rents, income, revenues, issues, earnest money, deposits, refunds (including but not limited to refunds from taxing authorities, utilities and insurers), royalties, and profits, including mineral, oil and gas rights and profits, insurance proceeds of any kind (whether or not Lender requires such insurance and whether or not Lender is named as an additional insured or loss payee of such insurance), condemnation awards and other moneys, payable or receivable from or on account of any of the Property, including interest thereon, or to enforce all other provisions of any other agreement (including those described above) affecting or relating to any of the Property, to bring any suit in equity, action at law or other proceeding for the collection of such moneys or for the specific or other enforcement of any such agreement, award or judgment, in the name of the Borrower or otherwise, and to do any and all things that Borrower is or may be or become entitled to do with respect thereto, provided, however, that no obligation of Borrower under the provisions of any such agreements, awards or judgments shall be impaired or diminished by virtue hereof, nor shall any such obligation be imposed upon Lender; and

2

1.4      Accounts and Income. Any and all rights of Borrower in any and all accounts, rights to payment, contract rights, chattel paper, documents, instruments, licenses, contracts, agreements and general intangibles relating to any of the Property, including, without limitation, income and profits derived from the operation of any business on the Property or attributable to services that occur or are provided on the Property or generated from the use and operation of the Property; and

1.5      Leases. All of Borrower's rights as landlord in and to all existing and future leases and tenancies, whether written or oral and whether for a definite term or month to month or otherwise, now or hereafter demising all or any portion of the property described above, including all renewals and extensions thereof and all rents, deposits and other amounts received or receivable; and

1.6      Books and Records. All books and records of Borrower relating to the foregoing in any form.

To the extent any of the property described above is personal property, Collateral shall also include a security interest therein together with a security interest in all other personal property of whatsoever nature that is located on or used or to be used in connection with any of the property described above, and any products or proceeds of any thereof, pursuant to the Uniform Commercial Code of the state of New York (the "**UCC**").

### Schedule 1

1.      10 Emma Street Units 1-3, Liberty, Sullivan, NY 12754

2.      10 Thomas Street, Monticello, Sullivan, NY 12701

3.      126 Park Ave. Unit 1, Monticello, Sullivan, NY 12701

4.      126 Park Ave Unit 13, Monticello, Sullivan, NY 12701

5.      128 Park Ave Unit 3, Monticello, Sullivan, NY 12701

6.      128 Park Ave Unit 4 Aka As 126 Park Ave Unit 4, Monticello, Sullivan, NY 12701

7.      128 Park Ave Unit 5 Aka 126 Park Ave Unit 5, Monticello, Sullivan, NY 12701

8.      128 Park Ave Unit 6, Monticello, Sullivan, NY 12701

9.      13 Cross Street Units 1-2, Monticello, Sullivan, NY 12701

10.     133 Park Ave Aka 1 Feldberg Dr, Monticello, Sullivan, NY 12701

11.     14 Tierney Place, South Fallsburg, Sullivan, NY 12779

12.     167 Park Ave Unit 1-12, Monticello, Sullivan, NY 12701

13.     17 Old Silver Pond Rd, Fallsburg, Sullivan, NY 12733

14.     26 Prince Street Units 1-2, Monticello, Sullivan, NY 12701

15.     35 Edwards Ave, Monticello, Sullivan, NY 12701

16.     52 High Street, Bloomingburg, Sullivan, NY 12721

17.     54 West Street Unit 1-4, Liberty, Sullivan, NY 12754

18.     57 Ivy Lane, Monticello, Sullivan, NY 12701

19.     6335 State Route 52, Woodbourne, Sullivan, NY 12788

20.     94 Shawanga Lodge Road, Bloomingburg, Sullivan, NY 12721

21.     95 Lake Street, Liberty, Sullivan, NY

74155349