Morgan C. Fiander
**POLSINELLI PC**
600 Third Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
mfiander@polsinelli.com

*Counsel to Wilmington Trust, National Association, as Trustee, for the Benefit of the Holders of CoreVest American Finance 2019-1 Trust Mortgage Pass-Through Certificates*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
In re:                                            :
                                                  :   Chapter 11
    Monticello Horizon Legacy, LLC,               :
                                                  :   Case No.: 20-35665-cgm
                        Debtor.                   :
------------------------------------------------------------X

## SUPPLEMENTAL OMNIBUS OBJECTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION TO MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 363(b)(1) AND 363(f)(3) AUTHORIZING DEBTOR'S SALE [DOCKET NO. 34] AND MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 363(b)(1) AND 363(f)(3) AUTHORIZING DEBTOR'S SALE [DOCKET NO. 40]

Wilmington Trust, National Association, as Trustee, for the Benefit of the Holders of CoreVest American Finance 2019-1 Trust Mortgage Pass-Through Certificates (the "**Lender**") in the above-captioned case of Monticello Horizon Legacy, LLC (the "**Debtor**" or the "**Borrower**"), by and through undersigned counsel, hereby submits this supplemental objection (this "**Supplemental Objection**") to the *Motion for an Order Pursuant to 11 U.S.C. §§ 363(b)(1)( and 363(f)(3) Authorizing Debtor's Sale* [Docket No. 34] (the "**Park Avenue Sale Motion**") and the *Motion for an Order Pursuant to 11 U.S.C. §§ 363(b)(1) and 363(f)(3) Authorizing Debtor's Sale* [Docket No. 40] (the "**Prince Street Sale Motion**", and together with the Park Avenue Sale

76992240.4

Motion, the "**Sale Motions**") in further support of the *Omnibus Objection of Wilmington Trust, National Association to Motion for an Order Pursuant to 11 U.S.C. §§ 363(b)(1) and 363(f)(3) Authorizing Debtor's Sale [Docket No. 34] and Motion for an Order Pursuant to 11 U.S.C. §§ 363(b)(1) and 363(f)(3) Authorizing Debtor's Sale [Docket No. 40]* [Docket No. 44] (the "**Objection**").[1] In support of this Supplemental Objection, the Lender respectfully represents as follows:

## BACKGROUND

1. In the Objection, the Lender objected to the Sale Motions for five reasons: (i) the proposed sales did not meet the Release Prices under the Loan Agreements; (ii) the Lender did not have sufficient information regarding the Potential Purchasers; (iii) the Lender did not have sufficient information regarding the financing of the potential sales; (iv) the Lender did not believe the appraisals were accurate;[2] and (v) when combined with the other facts surrounding the transactions, the appraisals, combined with the proposed purchase prices raised further questions.

2. The Court held a hearing on the Sale Motions on January 26, 2021 (the "**January Hearing**") and postponed further consideration of the Sale Motions until March 9, 2021 (the "**March Hearing**").

3. After the January Hearing, counsel to the Lender requested certain information and documents from counsel to the Debtor, and has received some information. Based on this information, along with the Lender's own investigation, the Lender is no longer contesting the appraisal.

---

[1] Defined terms used herein and not otherwise defined shall have the meanings ascribed to them in the Objection.
[2] While the Lender is no longer objecting to the appraisals, it must note that the appraisal of the Park Avenue Property is internally inconsistent, noting at times that the Park Avenue Property is worth $420,000 and at times noting that it is worth $472,000.

**OBJECTION**

4. The Lender renews its opposition to the Sale Motions, and requests that the Court deny the Sale Motions for the following reasons.

5. First, the proposed sales do not meet the "Release Prices" under the Loan Agreements. As the Objection notes, the Loan Agreement provides for Release prices for each Property, which is comprised of "120% of the initial Allocated Loan Amount for such Property" and an associated prepayment premium. The "Allocated Loan Amount" is, "with respect to each Property, the portion of the Loan Amount allocated thereto." The proposed sale of the Park Avenue Property results in a shortfall of $87,645.31. At this time, the Lender will not consent to a sale for less than $559,645.31. Similarly, the proposed sale of the Prince Street Property results in a shortfall of $7,841.51. At this time, the Lender will not consent to a sale for less than $86,841.51. This is in addition to the resulting shortfall from accrued interest and other fees and costs.

6. Second, despite the request of the Lender's counsel, the Debtor has provided virtually no information regarding the Potential Purchasers, particularly, their relatedness to the unsecured creditors. The Lender has requested from the Debtor documents related to the unsecured creditors (collectively, the "**Unsecured Creditors**") listed on Schedule E/F[3], but has yet to receive any meaningful responses related to the basis of the Unsecured Creditors' claims (pre- or post-petition). The Lender has basically the same information as it did at the January Hearing.

7. Third, the sales should not be approved at this time because the Debtor is not moving this case forward. The Debtor filed this case on June 24, 2020 (the "**Petition Date**"). The Debtor's Schedule A/B [Docket No. 10] lists the Debtor's fifteen properties (the "**Properties**"), all of which are subject to the Lender's liens. As of the Petition Date, the Debtor valued the

---

[3] Blooming Cove LLC, Fair Oaks Commercial LLC, Glen Cove Pines LLC, Pine Bush Capital LLC, Scenic Ridge Mills LLC, and Stone Heritage Capital LLC.

properties at $2,016,630.00 in the aggregate. Together, the Prince Street Property and Park Avenue Property accounted for approximately 31% of the value of all the Properties. In fact, the Park Avenue Property is valued at more than double any other Property. The Debtor filed the Sale Motions more than five months after the Petition Date and has not proposed any action with regard to the other thirteen properties in this case. The Debtor has not filed a plan or any other sale motions. The Debtor continues to drift aimlessly through bankruptcy with no exit strategy.[4]

8.   For these reasons, the Sale Motions should be denied at this time.

## ARGUMENT

### I.   The *Lionel* Factors Do Not Support Approving the Sale Motions

9.   In the Sale Motions, the Debtor argues that pursuant Bankruptcy Code section 363, the Court should approve the proposed sales. When determining whether to approve a sale under Bankruptcy Code section 363, Courts look to the *Lionel* factors, which include:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.

*In re Flour City Bagels, LLC*, 557 B.R. 53, 77 (Bankr. W.D.N.Y. 2016) (quoting *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

10.   Additionally, because the *Lionel* factors are not exclusive, Courts may look to other factors such as:

---

[4] To the contrary, if the Sale Motions are approved, the Lender will have an unsecured claim larger than any other unsecured creditor, making it crucial that the Debtor communicate with the Lender on an exit strategy, which will require the Lender's consent. Further, the Debtor has failed the basic requirements of being a debtor by consistently failing to file monthly operating reports and letting exclusivity lapse. The Lender pointed these items out in November 2020, but the Debtor continues to prosecute the Chapter 11 Case. *See Motion of Wilmington Trust, National Association to Appoint a Chapter 11 Trustee* [Docket No. 28].

> • Does the estate have the liquidity to survive until confirmation of a plan?
>
> • Will the sale opportunity still exist as of the time of plan confirmation?
>
> • If not, how likely is it that there will be a satisfactory alternative sale opportunity, or a stand-alone plan alternative that is equally desirable (or better) for creditors? and
>
> • Is there a material risk that by deferring the sale, the patient will die on the operating table?

*In re Boston Generating, LLC*, 440 B.R. 302, 322 (Bankr. S.D.N.Y. 2010) (quoting *In re General Motors Corp.*, 407 B.R. 463, 490 (Bankr. S.D.N.Y. 2009)). *See also In re* Family Christian, LLC, 533 B.R. 600, 626 (Bankr. W.D. Mich. 2015) (looking to "(i) whether adequate and reasonable notice has been provided to parties in interest, including full disclosure of the sale terms and the debtor's relationship with the purchaser, (ii) whether the sale price is fair and reasonable, and (iii) whether the proposed buyer is proceeding in good faith.").

11. Here, the *Lionel* factors weigh in favor of denying the Sale Motions. The Debtor is proposing to sell the "crown jewel" of the Properties for less than its Release Price, making these sales not fair nor reasonable with respect to the Lender. Moreover, despite being in bankruptcy for more than eight months the Debtor has not proposed a plan, let alone is a plan likely to be confirmed in the near future.[5] The Court should not approve the Sale Motions without a plan of reorganization on file. Looking to the other factors cited by the Court in *Boston Generating*, the Debtor has provided absolutely no evidence as to the proposed sales or marketing process. For example, the record is not clear as to whether the entire portfolio of Properties were marketed together or only on an individual basis, whether the Proposed Purchasers would consent to

---

[5] *See In re George Walsh Chevrolet, Inc.*, 118 B.R. 99, 101 (Bankr. E.D. Mo. 1990) (holding that "in the absence of the protection and finality offered by a disclosure statement and plan, . . . [a] sale [pursuant to Section 363(b)] must be closely scrutinized, and the proponent bears a heightened burden of proving the elements necessary for authorization.").

extending the sale process, or whether any other offers were received.[6] The Debtor has also not approached the Lender for other alternative uses of the Properties, like restructuring the terms of the entire portfolio. Finally, the economy's return to normalcy after COVID-19 means that the value of the Properties will likely increase, rather than decrease.

## II.     Bankruptcy Code section 363(f)(3) Has Not Been Met

12.     The Debtor contends that *Boston Generating* and Bankruptcy Code section 363(f)(3) allows the Park Avenue Property and Prince Street Property to be sold free and clear of the Lender's interest. The Court should not approve the Sale Motions on this basis.

13.     Bankruptcy Code section 363(f)(3) provides that a debtor "may sell property . . . free and clear any interest in such property of an entity other than the estate only if . . . . such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property." This provision is subject to a split of authority between the face value test which interprets the word "value" in Bankruptcy Code section 363(f)(3) to refer to the face amount of the lien,[7] and the economic value test which interprets "value" to mean the value of the liens, not their amount.[8]

14.     The Court is not bound by *Boston Generating*, and should decline to follow it here.[9] *Boston Generating* involved a "robust, open, and fair process in which substantial marketing and due diligence materials were widely distributed." *In re Boston Generating, LLC*, 440 B.R. at 323. The Court's reasoning in adopting the economic value approach was that second lienholders could

---

[6] *See, e.g.*, *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992) ("In general, to receive approval of a proposed sale of assets, the debtor will need to demonstrate to the bankruptcy court that the proffered purchase price is the highest and best offer.").
[7] *See, e.g.*, *Clear Channel Outdoor, Inc., v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (9th Cir. BAP 2008).
[8] *See, e.g.*, *In re Beker Indus. Corp.*, 63 B.R. 474 (Bankr. S.D.N.Y. 1986).
[9] *Boston Generating* clearly does not bind the Court and the Bankruptcy Court for the Southern District of New York has previously employed the face value approach. *See In re General Bearing Corp.*, 136 B.R. 361, 366 (Bankr. S.D.N.Y. 1992).

6

76992240.4

stop free and clear sales. The facts are demonstrably different here as there is no evidence of *any* process, let alone a robust, open, and fair process. The Chapter 11 Case is like a single asset real estate case with multiple properties. The Debtor has few unsecured creditors, the aggregate value of their claims is less than $150,000, while, on the other hand, the Lender has a claim of $2,595,957.46 and a first lien on substantially all of the Debtor's assets.

## NOTICE

15. Notice of this Supplemental Objection has been provided by electronic mail and/or electronic service to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to the Debtor; and (iii) all parties who requested service via the Court's CM/ECF system.

| | |
|---|---|
| Dated:  New York, NY<br>March 2, 2021 | Respectfully submitted,<br><br>**POLSINELLI PC**<br><br>*/s/    Morgan C. Fiander*<br> Morgan C. Fiander<br>600 Third Avenue, 42nd Floor<br>New York, New York 10016<br>Telephone: (212) 684-0199<br>Facsimile: (212) 684-0197<br>mfiander@polsinelli.com<br><br>*Counsel to Wilmington Trust, National Association, as Trustee, for the Benefit of the Holders of CoreVest American Finance 2019-1 Trust Mortgage Pass-Through Certificates* |

7

76992240.4